Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452

Attorneys for Plaintiff
MATTHEW MONROY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MONROY, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983** |
| v. | |
| COUNTY OF LOS ANGELES, LOS ANGELES COUNTY PROBATION DEPARTMENT, LOS ANGELES COUNTY CHIEF PROBATION OFFICER ADOLFO GONZALEZ, DSO BRUMFIELD, DSO VELASQUEZ, DSO PINKY, DSO WILEY, DSO MEREDITH, DSO OCHOA, DSO VAZQUEZ, DSO RISVI and DOES 1 TO 15, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## INTRODUCTION

1.     The Los Angeles County Probation Department is supposed to protect the children it keeps in its custody. Starting almost immediately upon being housed at Barry J. Nidorf Juvenile Hall in April of 2021, Plaintiff, Matthew Monroy, was targeted, physically attacked, and injured by both Probation staff and other juvenile detainees within the County facility.

2.     Not only did Probation staff fail to protect Plaintiff from repeated unprovoked attacks from other detainees, Probation staff in many instances were directly responsible for unnecessary applications of excessive force and violence.

1

3.     In one instance, Plaintiff was beat so badly that Probation staff had to transport him from his bloodied room to the hospital. During this instance, Plaintiff was admitted to UCLA Medical for head trauma and head lacerations. Plaintiff received stitches and a CT scan to rule out internal hemorrhaging.

4.     Plaintiff relayed to Probation staff shortly after the incident that he was in fear for his life and communicated a concern that the minors on the "W2 side" would eventually kill him. Probation did nothing. Plaintiff complained on numerous occasions that he was in fear for his life, that he was being threatened, and that he did not want to leave his room. Probation did nothing.

5.     As predicted, Plaintiff was hospitalized once again, just one month after complaining to Probation staff. This time, however, Probation staff actually encouraged and promoted the violence as staff and guards watched and laughed, as other juvenile detainees attacked and beat Plaintiff. The gravity of the situation was not appreciated by any Probation staff until a nurse indicated almost half hour later, that Plaintiff needed immediate medical attention. Plaintiff was transported to UCLA Medical where he was placed under observation. Plaintiff suffered a concussion, lacerations to his face, and swelling. Plaintiff was vomiting, nauseous, and complained of severe headaches while at the hospital.

7.     In the months that followed, up to present day, Plaintiff continues to be the target of harassment, violence, and retaliation. Probation staff has allowed other juveniles to not only use physical violence onto Plaintiff, but has allowed other juveniles to urinate on Plaintiff's belongings, labeling him a "snitch," which has escalated the amount of violence Plaintiff has been forced to endure.

8.     Despite Plaintiff's feeling that no one would believe him, concern for his physical well-being led Plaintiff to file numerous complaints with the Probation Department. Plaintiff's mother also contacted the Los Angeles County Board of Supervisors in the hopes of alerting those at the highest level of Probation oversight, about what was happening to her son.

9.     Since that time, Plaintiff has been retaliated against and intimidated by staff and his peers for seeking help. The broader staffing issues at Barry J. have allowed these instances of harassment, violence, and intimidation to continue.

**JURISDICTION AND VENUE**

10.     This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11.     Plaintiff's claims arise out of a course of conduct involving officials for the County of Los Angeles, in the County of Los Angeles, State of California, and venue is proper in Central District of California pursuant to 28 U.S.C. § 1391

**PARTIES**

12.     Plaintiff Matthew Monroy is an adult competent to sue. At all relevant times, Plaintiff was a detainee at Barry J. Nidorf Juvenile Hall ("Barry J."), a juvenile hall located at 16350 Filbert St, Sylmar, CA 91342.

13.     Defendant County of Los Angeles ("County") is a legal and political entity established under the laws of the State of California, with all of the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Probation Department and its agents and employees. At all relevant times, County was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, County was the employer of each of the individually named defendants, and Barry J. was a Los Angeles County-run facility.

14.     Defendant Los Angeles County Probation Department ("LACPD") is a public agency. At the times relevant hereto, Defendant Los Angeles County Chief

3

Probation Officer Adolfo Gonzalez ("Chief Gonzalez") was the Chief Probation Officer for the County of Los Angeles and is sued in both his official and individual capacities. At all relevant times, LACPD and Chief Gonzalez were responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. LACPD was the County agency responsible for operating juvenile halls, including Barry J.

15.     At all relevant times, Defendants County, LACPD, and Chief Gonzalez, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the LACPD.

16.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 15, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is informed, believes and alleges that each of the fictitiously named Defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to and described, and thereby illegally caused the injuries, damages, and violations and/or deprivations of rights hereinafter alleged. Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named Defendants when the same have been ascertained.

17.     The reason why Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does, inclusive, is that some have been unascertainable as of the date of filing of this complaint, as many of these Does may be LACPD officers, and/or civilian employee agents, policy makers and representatives of the LACPD, or employees, agents and representatives of Defendant County and others, and as such many of their records are protected by state statute and can only reasonably be ascertained through the discovery process.

18.     The individual Defendants were at all times mentioned herein duly

4

1  appointed, qualified and acting officers of the LACPD, acting within the course and

2  scope of such employment with the County, with complete authority and ratification of

3  the principal, the County, and acted under color of the statutes, ordinances, regulations,

4  policies, customs and usages of the State of California and of the County of Los

5  Angeles. Each individual Defendant is sued in both his/her individual and official

6  capacities.

7  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8       19.    Pursuant to Government Code § 910, Plaintiff presented to Defendant

9  County of Los Angeles an appropriate claim for damages. The claim was rejected by

10  written notice on January 31, 2022. This action is timely.

11  **FACTS**

12       20.    Starting almost immediately upon being housed at Barry J. Nidorf

13  Detention Facility, Plaintiff found himself the target of repeated harassment and

14  assaults from both Probation staff and other juvenile wards within the complex.

15       21.    On May 19, 2021, at approximately 9pm, in Room #44 of the compound

16  school, Plaintiff was physically assaulted by two other juveniles. As the two other

17  juveniles ran toward Plaintiff to attack him, they yelled at Plaintiff saying, "you're a

18  fucking snitch, you're dead." Plaintiff recalls DSO R. Brumfield (E494339) and DSO R.

19  Velasquez (E663259) present and observed the unprovoked physical assault. The

20  inaction by DSO Brumfield and DSO Velasquez, resulted in Plaintiff being attacked by

21  two other juvenile wards. Instead of protecting Plaintiff or making any effort to

22  deescalate or restrain the other individuals from attacking Plaintiff, both DSO

23  Brumfield and DSO Velasquez pepper sprayed Plaintiff in the face. Both DSO's

24  administered bursts of OC spray so close to one another, as they stood over Plaintiff,

25  that DSO Brumfield was pepper sprayed by DSO Velasquez. Plaintiff recalls the

26  incident as "total chaos." Plaintiff was eventually transported to medical where he had

27  to decontaminate from the unlawful and excessive administration of force by DSO

28  Brumfield and DSO Velasquez.

20.     On July 23, 2021, at approximately 7am, Plaintiff was asleep in his room within the Barry J. Nidorf Detention Facility, on the W-1 side of the complex. At that time, other juveniles entered Plaintiff's room as he slept. Plaintiff's room is routinely locked before bed and remembers his door being locked prior to falling asleep. Multiple juveniles entered Plaintiff's room and began to physically assault and attack Plaintiff as he laid in his bed, defenseless. Plaintiff was kicked, punched, and hit with an unknown small object as he tried to cover himself from the blows. Plaintiff managed to get himself into the fetal position and cover himself with his bedsheet during the attack. Plaintiff's best estimate was that there were 2-3 juvenile wards in his room assaulting him. Plaintiff then heard DSO L. Pinky (E659446) standing outside his room door laughing. Plaintiff heard DSO Pinky say, "stop, I'm going to get fired," directing these remarks to the juveniles committing the assault on Plaintiff. Plaintiff believes DSO Pinky unlocked his room door, allowing the other juveniles to gain access to Plaintiff. This belief is evidenced by DSO Pinky's statement to Plaintiff (after the other juveniles exited Plaintiff's room), "next time you know not to snitch!" DSO Pinky made no effort to protect Plaintiff or to stop the assault on Plaintiff which took place in his immediate presence.

21.     Plaintiff was beaten so badly on July 23, 2021, that he was ultimately transported from his bloodied room to UCLA Medical Hospital for his injuries. There, he was seen by doctors for head trauma and head lacerations. Plaintiff suffered a black eye, cut lip, and scaring to his eye which required 3 stitches to his left eyebrow. Plaintiff also required a CT scan to rule out internal hemorrhaging, and an MRI was recommended for further evaluation.

22. On July 30, 2021, Plaintiff told staff at Barry J. that he was in fear for his life and that he didn't feel as though he was being adequately protected given the number and growing frequency of the assaults onto him. Specifically, Plaintiff told DSO H. Wiley that he believed the wards on of the W-2 side would eventually kill him. DSO Wiley never reported this statement and took no action in response to this statement.

6

In fact, DSO Wiley didn't ask a single question in response to Plaintiff's pleas for help. Simply put, DSO Wiley did nothing.

23. Again, on August 3, 2021, Plaintiff repeated his pleas to Probation staff, this time to DSO Y. Meredith (E625890) and DSO Ochoa. Plaintiff again stated that he believed the other wards would kill him and that he was in fear for his life. Plaintiff indicated to staff that he did not want to leave his room. DSO Meredith and DSO Ochoa did not report this statement and took no action in response to this statement. In fact, neither DSO asked a single question in response to Plaintiff's pleas for help. Simply put, DSO Meredith and DSO Ochoa did nothing.

24. On August 13, 2021, just one week after his pleas for help to staff, Plaintiff was again hospitalized. At around 7pm, in the dayroom of W-2, Plaintiff was sitting in a chair by himself when another juvenile began to run circles around him. Plaintiff observed DSO F. Vazquez (E488189) and DSO R. Velasquez (E663259) standing in the back of the room laughing at him, as the other juvenile was running around the chair. Plaintiff was then "sucker-punched" in the back of the head by another juvenile ward with a closed fist. Instead of attempting to assist Plaintiff, both DSO Vazquez and DSO Velasquez stood and laughed at Plaintiff. The force of the blow caused Plaintiff to fall out of his chair. Plaintiff's head struck the hard floor of the dayroom and he immediately lost consciousness. Once Plaintiff regained consciousness, he observed DSO Vazquez forcefully grab him by the shirt and escort him back to his room. DSO Vazquez appeared amused by what transpired.

25. Over thirty minutes passed while Plaintiff sat alone in his room. At this time, Plaintiff experienced excruciating pain to his head, dizziness and nausea. By around 8pm, a decision was finally made to transport Plaintiff to the emergency room for immediate medical intervention. Plaintiff was admitted to Olive View Medical Center and placed under observation due to the fact that Plaintiff was vomiting, was nauseous, and had visible swelling. Plaintiff complained of severe headaches and upon admittance had to be administered morphine for the pain.

26.     Several days after the August 13th hospitalization, Plaintiff's mother, Eva Monroy, echoed her son's pleas for help to not only Probation staff but to Ms. Katheryn Berger's Office. Again, Probation took no action.

26.     In the months that followed, Plaintiff continued to be the target of harassment, violence, and retaliation. Probation staff has allowed other wards to use physical violence onto Plaintiff and has allowed other wards to urinate on Plaintiff's shoes and clothes, labeling Plaintiff a "snitch." This has escalated the amount of violence Plaintiff has been forced to endure.

27.     In or around August 2021, Plaintiff's problems at Barry J. had descended into a life-threatening situation. Defendants not only refused to help but on most occasions were the root cause of the problems. Plaintiff's Public Defender ultimately sought court intervention as requested Plaintiff be transferred to Central Juvenile Hall given the severity of the problems. Probation officials went to court and objected to this request. Alternatively, Plaintiff's Public Defender requested protective custody. On August 20, 2021, Commissioner Steven E. Ipson, ordered that Probation place Plaintiff into protective custody. Plaintiff's reclassified housing status resulted in total isolation, having zero contact with other youths. Plaintiff was to remain isolated at all times and to be housed in a camera room alone. While isolation was certainly a temporary fix for the frequent physical assaults, Plaintiff's new housing status caused him severe mental anguish, emotional distress, and feelings of hopelessness.

28.     The zero-contact order and isolation caused Plaintiff to become suicidal. Accordingly, Plaintiff, through his Public Defender, requested that the Court lift the isolation order. Accordingly, on September 14, 2021, the Court ordered Probation to lift the zero-contact order.

29.     Predictably, the physical violence resumed. In November 2021, Plaintiff was taken to the dayroom by DSO Risvi only to be met by at lest six other juvenile wards. These wards attacked Plaintiff. Plaintiff did not fight back, covered himself, and hoped for the best. The attack ended with Plaintiff at the bottom of a dogpile,

1  coughing up blood and complaining of shortness of breath and difficulty breathing.

2      30.    The ongoing abuse has placed Plaintiff in a fragile state. Plaintiff has been

3  placed under suicide watch and has been forced to endure emotional and physical

4  abuse despite numerous pleas for help.

5                                    **DAMAGES**

6      31.    As a direct and proximate result of aforesaid acts and omissions, and the

7  customs, practices, policies and decisions of the defendants alleged in this complaint,

8  Plaintiff suffered and will continue to suffer great emotional, mental and physical pain

9  and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity,

10  embarrassment, harm to reputation, and apprehension, which have caused and will

11  continue to cause, Plaintiff to sustain general damages in a sum to be determined at

12  trial.

13      32.    As a direct and proximate result of the aforesaid acts, omissions, customs,

14  practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered

15  the denial of his fundamental constitutional rights guaranteed by the First, Fourth

16  Fourteenth Amendments of the United States Constitution, which have caused Plaintiff

17  to sustain damages in a sum to be determined at trial.

18      33.    As a further direct and proximate result of the aforesaid acts, omissions,

19  customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff

20  incurred and/or will continue to incur medical expenses, including psychological

21  treatment.

22      34.    DSO's Brumfield, Velasquez, Pinky, Wiley, Meredith, Ochoa, Vazquez,

23  Risvi, and individual Doe defendants, excluding Defendants County and LACPD,

24  acted in a manner that was willful, wanton, malicious and oppressive, with reckless

25  disregard of or in deliberate indifference to and with the intent to deprive the Plaintiff

26  of his constitutional rights, and did in fact violate the aforementioned rights, entitling

27  Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in

28  this matter.

**FIRST CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

**(First Amendment – Against LACPD, DSO Brumfield, DSO Velasquez, DSO Pinky, DSO Wiley, DSO Meredith, DSO Ochoa, DSO Vazquez, DSO Risvi, and Doe Defendants)**

35.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

36.     At all relevant times, Plaintiff Matthew Monroy was a ward of the court and detained by the LACPD at a juvenile detention facility operated by the County. Plaintiff made legal complaints about his mistreatment in LACPD custody.

37.     DSO Brumfield, DSO Velasquez, DSO Pinky, DSO Wiley, DSO Meredith, DSO Ochoa, DSO Vazquez, DSO Risvi and Doe Defendants, while acting under color of law, deprived Plaintiff Monroy of his civil rights under the First Amendment by acting and/or allowing each other to act in a threatening manner and otherwise engaging in conduct that inhibited Plaintiff's freedom of speech and right to petition for redress of grievances and to complain about his treatment while in custody, and that such actions undertaken by Defendants would chill a person of ordinary firmness from continuing to engage in freedom of speech.

38.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

39.     The conduct of DSO Brumfield, DSO Velasquez, DSO Pinky, DSO Wiley, DSO Meredith, DSO Ochoa, DSO Vazquez, DSO Risvi, and Doe Defendants was willful, wanton, malicious, or done with reckless disregard for the rights and safety

1  of Plaintiff.

2      40.    Plaintiff specifically alleges that these Defendants complained of acts

3  and/or omissions were within each of their control, and within the feasibility of each of

4  them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts

5  and injuries complained of herein by Plaintiff.

6      41.    As a direct and proximate result of the aforesaid acts, omissions, customs,

7  practices, policies and decisions of the aforementioned defendants, Plaintiff suffered

8  extreme and severe mental anguish, and was injured as alleged above, entitling him to

9  recover compensatory and punitive damages (excepts as to the entity Defendants)

10  according to proof.

11                          **SECOND CLAIM FOR RELIEF**

12              **Violation of Civil Rights – 42 U.S.C. § 1983**

13        **Failure to Intervene to Protect Pre-Trial Detainee in Custody**

14                  **(Fourteenth Amendment - Against Does 1-15)**

15      42.    Plaintiff incorporates by reference each and every allegation contained in

16  the foregoing paragraphs as if re-alleged herein.

17      43.    At all times relevant here, the individual defendants and Doe Defendants

18  1 through 15 were present and were charged with the constitutional duties of

19  protection of Plaintiff Monroy and were charged with the duty to not knowingly, with

20  wanton disregard, cause his health and safety to be placed in danger by intentionally

21  and/or deliberately ignoring the known dangers to Plaintiff Monroy while in LACPD

22  custody that their actions and/or omissions placed him in peril and extreme danger so

23  as to require multiple hospitalizations to address injuries sustained while in Defendant's

24  care.

25      44.    At all times relevant here, the individual Defendants and Doe Defendants

26  1 through 15 made an intentional decision with respect to the conditions under which

27  Plaintiff Monroy was confined. The conditions, including but not limited to: pepper-

28  spraying Plaintiff without cause and failing to decontaminate, intentionally unlocking

                                      11

Plaintiff's room door to allow entry by other wards, forcefully grabbing Plaintiff after a physical attack, facilitating and ratifying a culture of violence and intimidation against Plaintiff, aiding, abetting, encouraging and promoting said violence, and ignoring Plaintiff's repeated pleas for help. All of these actions and/or omissions were objectively unreasonable.

45.     At all times relevant here, the individual Defendants and Doe Defendants 1 through 15 did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, which made the consequences of individual and Doe Defendants' conduct obvious.

46.     As a proximate result of the conduct of the individual Defendants and Doe Defendants 1 through 15, in particular, by not taking such measures as described above, Plaintiff suffered injuries and damages set forth herein, including great physical pain and emotional distress.

47.     The conduct of the individual Defendants and Doe Defendants 1 through 15 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

## THIRD CLAIM FOR RELIEF

### Municipal Liability –Unconstitutional Custom, Practice, or Policy

### 42 U.S.C. § 1983

### (Against Entity Defendants)

48.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

49.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants County, LACPD, Gonzalez, and certain Does (hereinafter referred to collectively as the entity Defendants), with deliberate

indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

a.     Failing to adequately train, supervise, and control custodians of minor detainees in properly monitoring, deterring, controlling and responding to abuse of minor detainees by other minor detainees, and medical emergencies faced by minor detainees;

b.     Failing to establish policies and procedures to transport minor to emergency medical care within a reasonable time;

c.     Failure to respond to complaints that a detainee is in physical danger.

50.     By reason of the aforementioned policies and practices of Entity Defendants, Plaintiff experienced severe pain and suffering.

51.     Entity Defendants, together with various other officials, whether named or unnamed, had either actual or constrictive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendants condoned, tolerated, and through actions and inactions ratified such policies. Said Defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiff, and other individuals similarly situated. Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Entity Defendants were affirmatively linked to and were a significantly influential force behind Plaintiff's injuries.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability –Inadequate Training/Policy of Inaction**

**42 U.S.C. § 1983**

**(Against Entity Defendants)**

13

52.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

53.    At all times mentioned herein and prior thereto, Defendants County, LACPD, Gonzalez, and certain Does (entity Defendants), had a duty to train, instruct, supervise, and discipline their subordinates to assure they respected and did not violate constitutional and statutory rights of juvenile detainees, and to ensure their physical safety under the Fourth and Fourteenth Amendments to the U.S. Constitution.

54.    On information and belief, entity Defendants and certain Does facilitated, permitted, ratified and condoned similar acts of abuse of juvenile detainees by other juvenile detainees, and were deliberately indifferent to the health and safety of the detainees in general and Monroy in particular. Said defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so.

55.    As a result thereof, Plaintiff sustained the injuries and damages alleged herein, Plaintiff's rights under the Fourth and Fourteenth Amendment.

56.    Accordingly, Defendants County and certain Does each are liable to Plaintiff for compensatory damages and fees under 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF
### Conspiracy to Violate Civil rights
### 42 U.S.C. § 1983
### (Against All Individual Defendants and Does 1-15)

57.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

58.    This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a

1  right, privilege or immunity secured by the Fourth and Fourteenth Amendments to the

2  United States Constitution.

3    59.    Individual Defendants and Does 1-15, and each of them:

4        (a) had a joint and simultaneous duty to make sure that juvenile detainee

5        Monroy was physically safe while in County custody;

6        (b) had joint and simultaneous knowledge that Monroy was at risk of

7        being harmed by other juvenile detainees;

8        (c) with such duty, knowledge and a meeting of the minds, took action at

9        the same time and in the same place to collaborate to refuse to protect

10       Monroy from other detainees at Barry J. Thus, forming a 'pact of denial'

11       subjecting Monroy to continued and frequent bodily danger by the actions

12       of other wards – after the individual Defendants had been alerted to the

13       danger Monroy faced – not a single one of them did anything to intervene

14       on Monroy's behalf or prevent the harm of which they had been warned

15       and personally observed, despite Monroy's verbal pleas, requests for help,

16       Ms. Monroy's verbal pleas and written emails, prior complaints and in

17       LACPD probation reports, detention observation reports, and critical

18       incident reports;

19       (d) acted as described herein above, in conspiracy with, and with the

20       agreement permission, ratification, and approval of, each other to violate

21       Plaintiff's civil rights as stated herein.

22    60.    As a direct and proximate result of the aforementioned acts, omissions

23  and deliberate indifference of each of the Defendants, Plaintiff was harmed.

24

25

26

27

28

15

**SIXTH CLAIM FOR RELIEF**

**Negligence**

**Cal. Gov. Code § 844.6**

**(Against All Individual Defendants and Does 1-15)**

61. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

62. On or about May 19, 2021, July 23, 2021, August 13, 2021, and November of 2021, Plaintiff, while in Defendants' custody, was assaulted, injured, and on at least two occasions hospitalized.

63. Individual defendants and Does 1-15 herein, agents, servants, and/or employees of County, and within the course and scope of such agency, service, and/or employment, and under color of authority, were negligent in regards to Plaintiff's health, safety and welfare, and breached that duty of care.

64. As a result, Plaintiff was injured.

**SEVENTH CLAIM FOR RELIEF**

**Bane Act**

**Cal. Civ. Code § 52.1**

**(Against All Individual Defendants and Does 1-15)**

65. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

66. The Cal. Const. Art. 1 § 13 guarantees the right of persons to be free from inmate violence and threats while in custody. Defendants, by engaging in the wrongful conduct alleged herein, denied this right to Plaintiff, thus giving right to this claim for damages pursuant to Cal. Civ. Code § 52.1

67. As a direct and proximate result of the aforementioned acts of Defendants, Plaintiff was injured as set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52.1, as well as attorneys' fees, compensatory and

16

1   punitive damages according to proof.

2      68.    In doing the foregoing wrongful acts, the individual and Doe Defendants,

3   and each of them, acted in reckless and callous disregard for the constitutional rights of

4   Plaintiff. The wrongful acts, and each of them, were willful, oppressive, and malicious,

5   thus warranting the award of punitive damages against the individual Defendants (but

6   not entity Defendants) in an amount adequate to punish the wrongdoers and deter

7   future misconduct.

8      69.    As a result, Plaintiff was injured.

9

10                          **EIGHTH CLAIM FOR RELIEF**

11                          **Failure to Summon Medical Care**

12                          **Cal. Gov't. Code § 845.6**

13                          **(Against Does 1-15)**

14      70.    Plaintiff incorporates by reference each and every allegation contained in

15   the foregoing paragraphs as if re-alleged herein.

16      71.    While in defendants' custody, Plaintiff was assaulted by juvenile detainees

17   resulting in head trauma, head lacerations, stitches, swelling, bruising, scaring, trauma,

18   and multiple hospitalizations.

19      72.    The individual Defendants and all individual Doe Defendants herein

20   agents, servants, and employees of the County, and within the course and scope of that

21   agency, service, and/or employment, and under color of authority, failed to take

22   reasonable action to summon medical care for Plaintiff, despite knowing that he was in

23   need of immediate medical care, in violation of Cal. Gov't Code § 845.6.

24      73.    As a result, Plaintiff's injuries worsened and his injuries were

25   compounded.

26      74.    As a result, Plaintiff sustained the injuries and damages alleged herein.

27

28

## NINTH CLAIM FOR RELIEF

### Supervisory Liability – 42 U.S.C. § 1983

(Against Supervising Officer Does 1 and 2 and Does 9-10)

75.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

76.     Supervising Officer Does 1 and 2, and Does 9-10 acted in a supervisory capacity under color of law.

77.     The acts and failures of Supervising Officer Does 1 and 2 and Does 9-10 were a cause of the physical abuse of Plaintiff which deprived Plaintiff of his particular rights under the First, Fourth, and Fourteenth Amendments, as alleged above.

78.     The Supervising Officer Does 1 and 2 and Does 9-10 knew and had been put on notice that their subordinate officers were engaging in conduct in violation of written policy and knew or reasonably should have known that his conduct would deprive Plaintiff of these rights, including but not limited to not protecting Plaintiff after being put on notice that his safety was endangered while at Barry J.

79.     The Supervising Officer Does 1 and 2 and Does 9-10 failed to act to prevent their subordinates from engaging in such conduct.

80.     The known or obvious consequence of training deficiencies and the failures to enforce written policies would be to cause subordinates to violate Plaintiff's constitutional rights;

81.     The Supervising Officer Does 1 and 2 and Does 9-10 disregarded this consequence.

82.     These training deficiencies and the failures to enforce written policies resulted in the deprivation of Plaintiff's rights.

83.     The Supervising Officer Does 1 and 2 and Does 9-10 engaged in conduct that showed a reckless or callous indifference to the deprivation by their subordinates of the rights of others.

84.     The conduct of Supervising Officer Does 1 and 2 and Does 9-10 was

18

willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to each of those Defendants.

//

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1. General and Special damages in an amount according to proof;
2. Exemplary and punitive damages against each individual and Doe Defendant, but not against the entity Defendants, in amounts according to proof;
4. Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and
5. Such other relief as may be warranted or as is just and proper.


DATED:  June 9, 2022            **LAW OFFICES OF JUSTIN E. STERLING**


                                By:    */s/ Justin E. Sterling*
                                       Justin Sterling
                                       Attorney for Plaintiff
                                       Matthew Monroy

19

1

2

**JURY DEMAND**

Plaintiff Matthew Monroy hereby demands trial by jury on all issues so triable.

3

4

**LAW OFFICES OF JUSTIN E. STERLING**

DATED:  June 9, 2022

5

6

By:     */s/ Justin E. Sterling*
_____

7

Justin Sterling
Attorney for Plaintiff,
Matthew Monroy

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28